USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/19/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Isa-Abdul Karim,

                  Plaintiff,

–v–

Correction Officer Dayne Ball, *et al*.,

                  Defendants.

18-cv-11508 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff brings claim against Defendant officers under 42 U.S.C. § 1983 for retaliation in violation of his First Amendment rights and unconstitutional conditions of confinement in violation of his Eighth and Fourteenth Amendment rights. Defendants move to dismiss all claims for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6). The Court grants Defendants motion to dismiss Plaintiff's retaliation claims against all Defendants except Defendant Ball, as well as Defendants motion to dismiss Plaintiff's conditions of confinement claim against all Defendants except Defendants Ball and Leon.

    I.      BACKGROUND

    The following facts are drawn from Plaintiff's Complaint. *See* Dkt 1 ("Complaint"). Plaintiff Isa-Abdul Karim was taken into custody by the Department of Corrections (DOC) on or about November 14, 2015 while awaiting trial for his criminal case. Comp. ¶ 9. He was initially housed in an open-door housing unit where detainees are kept together in a large room instead of being confined to individual cells. *Id.* at ¶ 12. DOC psychiatrists did not want him housed in a single cell due to his mental conditions, which included a diagnosis of schizophrenia and

1

symptoms of hallucinations and seizures. *Id.* at ¶¶ 10, 13. Plaintiff had attempted suicide on numerous occasions, including during his detainment with DOC. *Id.* at ¶ 11.

While in the open housing unit, Plaintiff says he was harassed by Defendant Correction Officer Aponte. *Id.* at ¶ 14. He says that Defendant Aponte did not want him in the unit. *Id.* He says he complained about Defendant Aponte to medical staff and that he "eventually called 311." *Id.* at ¶ 15.

Plaintiff claims that Defendant Aponte and his associate, Defendant Corrections Officer Cruz, retaliated against him for the complaint by moving him out of the open unit housing and into a single cell unit. *Id.* at ¶ 15. He alleges that Defendants Aponte and Cruz did so "in contravention of the psychiatrists' admonition that he remain in an open dorm setting." *Id.*

Plaintiff further avers that being kept in a single cell caused his health to deteriorate rapidly. *Id.* at ¶ 16. Plaintiff attempted suicide by swallowing batteries and trying to hang himself. *Id.* He was then removed by DOC staff to Harts Island clinic. *Id.*

While Plaintiff was being kept at the clinic, he alleges he had a threatening interaction with Defendant Correction Officer Ball. *Id.* at ¶ 17. According to the complaint, Defendant Ball approached the plaintiff and said that Defendant Aponte was his "boy" and that Plaintiff was going to "pay" for the complaint he made against him and told him he would make him suffer. *Id.*

Plaintiff alleges that Defendant Ball "kept his word" by making sure he stayed in the Harts Island intake cell for approximately six days, even though those cells are designed only for short term stays. *Id.* at ¶ 18. Plaintiff alleges that during this time he was kept in "repugnant" conditions. *Id.* Specifically, he was kept in a cell that had no toilet, bed, or sink, but only a metal chair. *Id.* at ¶ 19. Plaintiff was forced to defecate in cartons of milk left by other inmates

who had passed through and had no toilet paper.  *Id.*  Plaintiff was not allowed to leave the cell to use the bathroom or take a shower, and he had no access to personal hygiene items inside the cell either, such as toothpaste, toothbrush, or soap.  *Id.* at ¶¶ 19-20.

Plaintiff states that he had been seen by medical professionals during his time there who noted their concern in records that Plaintiff needed better care, lacked adequate hygiene, and should be moved out of intake.  *Id.* at ¶ 20.  Though these medical professionals requested that he be moved, Plaintiff was not in fact moved out of intake.  *Id.* at ¶ 21.

Plaintiff also alleges that while he was being kept in intake, an inmate who passed through his holding cell assaulted him and caused a contusion to his face.  *Id.* at ¶ 22.  Because of this, he was ordered (though he does not say by whom) to be taken to Bellevue hospital.  *Id.* at ¶ 23.  Plaintiff also says he had not yet been treated for the batteries that he swallowed, which lodged in his rectum, causing excruciating pain.  *Id.* at ¶ 25.

Plaintiff alleges that Defendant Ball prevented him from being brought to Bellevue, specifically by not bringing him out of his cell on his scheduled day until after the bus to Bellevue had left.  *Id.*  He says Defendant Ball directed an unnamed officer to forge Plaintiff's paperwork to indicate that he had gone to the hospital and returned, but upon information and belief, the officer he asked refused to follow the order.  *Id.* at ¶ 24.

Plaintiff alleges that the supervisor who was responsible for the intake area and Plaintiff's conditions of confinement, Defendant Captain Leon, was aware of Plaintiff's condition of confinement and had the authority and responsibility to move him out of the holding cell but refused to do so.  *Id.* at ¶ 26.

Plaintiff says he was finally removed from the Harts Island Intake on or about February 5, 2015.  *Id.* at ¶ 28.

Plaintiff filed a Complaint on December 10, 2018, alleging claims against Defendant Correctional Officers under 42 U.S.C. § 1983 for violations of his Eighth and / or Fourteenth Amendment rights for his repugnant conditions of confinement and for violations of his First Amendment rights for the retaliation against him by the Defendant officers for the complaint he made against Defendant Aponte.  Defendants filed a Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on June 10, 2019.  Dkt 26, 27 ("Mot. Dismiss").

II.     DISCUSSION

Under Section 1983, a person may file suit against any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Plaintiff alleges that Defendant officers deprived him of his First Amendment rights by retaliating against him for his complaint against Defendant Aponte, as well as his Eighth and Fourteenth Amendment rights for subjecting him to conditions of confinement that were "repugnant to the conscience of mankind."  Comp. ¶ 30.

Defendants move to dismiss all of Plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  A pleading may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. Rule 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), the Plaintiff must provide sufficient factual matter in his Complaint to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible when it has "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"For the purpose of reviewing the grant of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, we accept as true the facts alleged in the Complaint, drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the plaintiff must provide more than just "labels and conclusions," *Twombly,* 550 U.S. at 555, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 554 U.S. at 678. A complaint also does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557).

For the reasons discussed below, the Court concludes that Plaintiff has failed to state a claim for retaliation against all Defendants except Defendant Ball, and that Plaintiff has also failed to state a claim for unconstitutional conditions of confinement claims against all Defendants except Defendants Ball and Leon.

### A. First Amendment Retaliation Claims

Plaintiff alleges in his Second and Third Causes of Action that Defendants Aponte, Cruz, Ball and Green retaliated against him for a complaint he made against Defendant Aponte.

"To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted). The Second Circuit has imposed a heightened standard for Section 1983 First Amendment retaliation claims in the prison context by requiring that district courts "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the

5

level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act," and therefore require that such claims be "supported by specific and detailed factual allegations," and not stated "in wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citations omitted).

Plaintiff has not met this heightened standard in alleging his claims against Defendants Aponte, Cruz, and Green, because Plaintiff has not alleged that there is a "causal connection" between his making a complaint to 311 about Defendant Aponte and Plaintiff being moved "to a single unit in contravention of" the medical professionals' admonition. Comp. at ¶ 15.

Plaintiff provides no factual detail in the Complaint suggesting that he was moved to a single cell because of his 311 call. While it is true that "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action," *Espinal*, 558 F.3d at 129, Plaintiff does not provide even approximate dates as to when the 311 complaint occurred and as to when he was moved to a single cell unit. (Indeed, the Complaint does not allege clear dates in any regard, at times stating that same event occurred in different years, *see* Comp. ¶¶ 2, 11, or does not provide a year at all, Comp. ¶ 12.). These two events could have occurred weeks apart, which would cut strongly against the inference that they are related, and Plaintiff could have been put into a single cell unit for other legitimate reasons (or by accident).

Furthermore, Plaintiff provides no allegations regarding Defendant Aponte's purported motivation for moving Plaintiff to a single cell. While Plaintiff says that Defendant Aponte "harassed" him and "did not want him in the unit," he has failed to provide any allegation as to what Defendant Aponte did to harass him, why he did not want him in the unit, or what actions Defendant Aponte took to give Plaintiff that impression. Comp. ¶ 14. The Court therefore views

6

these allegations as entirely conclusory speculations as to Defendant Aponte's state of mind. Plaintiff's bare assertions that Defendant Aponte retaliated against him are thus insufficient to survive a motion to dismiss under 12(b)(6). *See Iqbal*, 554 U.S. at 678.

Plaintiff's claims against Defendants Cruz and Green are even more conclusory and devoid of factual support. Defendant Cruz is mentioned once in the body of Complaint in a bare assertion that Defendant Cruz "retaliated" against him, but Plaintiff provides no details regarding Defendant Cruz's alleged motivation or involvement in any retaliatory conduct. Defendant Green is never even mentioned in the body of the Complaint at all. Especially considering the heightened standard for retaliation claims, *see Dolan*, 794 F.3d at 295, Plaintiff has failed to state a claim for retaliation against him by Defendants Aponte, Cruz, or Green.

However, Plaintiff has sufficiently alleged that Defendant Ball retaliated against him for the complaint against Defendant Aponte by moving Plaintiff to an intake cell at Harts Island and keeping him there for approximately six days. This is because, unlike for the other Defendants, Plaintiff alleges specific facts regarding Defendant Ball's intent to retaliate against him. First, he alleges that he had a conversation with Defendant Ball where the officer told him that Defendant Aponte was his "boy" and that he was going to make Plaintiff "pay" for making the complaint. Comp. ¶ 17. Second, he also alleges that Defendant Ball attempted to keep him in the intake cell by directing another officer to forge documents saying that Plaintiff had already gone to the hospital. These events, assuming for the purposes of this motion that they are true, are sufficient to plausibly allege at this stage that there is a causal relationship between Defendant Ball's alleged adverse action of moving Plaintiff to and keeping him in an intake cell and Plaintiff's protected speech of making the 311 call against Defendant Aponte.

The Court therefore grants Defendants' motion to dismiss Plaintiff's Second Cause of Action in its entirety and grants Defendant's motion to dismiss Plaintiff's Third Cause of Action against Defendants Aponte and Green. The Court denies Defendants' motion to dismiss Plaintiff's Third Cause of Action against Defendant Ball.

### B. Conditions of Confinement Claim

Plaintiff alleges in his First Cause of Action that all Defendants violated his Eighth and Fourteenth Amendment Rights by subjecting him to repugnant and unsafe conditions of confinement.

To bring a claim under Section 1983 for unconstitutional conditions of confinement, Plaintiff must show that "the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Establishing deliberate indifference is a two-prong test: first, the "objective prong" requires showing that the "challenged conditions were sufficiently serious to constitute objective deprivations," and the "subjective prong" requires showing that "the officer acted with at least deliberate indifference" as to the risk that those conditions posed. *Id.* Mere negligence, however, will not suffice for a Section 1983 claim. *Id.* at 41.

Plaintiff states that he brings his claims under the Eighth "and/or" Fourteenth amendments. Comp. ¶ 29. However, Plaintiff can only bring his claim under the Fourteenth Amendment because "[a] pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell*, 849 F.3d at 29.

For unconstitutional conditions of confinement claims brought under the Fourteenth Amendment, to satisfy the second prong of the deliberate indifference test a Plaintiff must show

8

that the officer either personally knew *or should have known* of the risk caused by those conditions. *Darnell*, 849 F.3d at 35 ("[T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."). *See also Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015).

Therefore, to survive the Defendants' motion to dismiss, the Plaintiff must have plausibly alleged that (1) his conditions of confinement at the intake cell were objectively serious enough to constitute deprivations of his Fourteenth Amendment Due Process rights, and (2) the Defendant officers in this case either knew, or should have known, of the grave risk to Plaintiff caused by such conditions.

First, Plaintiff has plausibly alleged that his conditions of confinement were objectively serious enough to constitute a deprivation of his Fourteenth Amendment rights.

"The constitutional standard by which the legality of conditions of confinement for pretrial detainees is . . . whether the conditions amount to punishment without due process in violation of the Fourteenth Amendment," *Lareau v. Manson*, 651 F.2d 96, 102 (2d Cir. 1981) (quotation marks omitted), because "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law," *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The failure to provide detainees with "adequate food, clothing, shelter, sanitation, medical care, and personal safety" while in confinement may constitute

punishment.  *Hodge v. Ruperto*, 739 F. Supp. 873, 876 (S.D.N.Y. 1990) (quoting *Lareau*, 651 F.2d at 106).

However, "[n]ot every disability imposed during pretrial detention amounts to punishment in the constitutional sense," and "[l]oss of freedom of choice and privacy," and "interfer[ence] with the detainee's understandable desire to live as comfortably as possible" does not "convert the conditions or restrictions of detention into punishment."  *Bell*, 441 U.S. at 537.  It matters whether the "disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose," as "the effective management of the detention facility" may require placing some restrictions on detainees.  *Lareau*, 651 F.2d at 103.  Courts have held that the depriving a detainee of a few basic necessities for a short period of time does not constitute punishment for purpose of a Fourteenth Amendment conditions of confinement claim.  *See, e.g., Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858944, at *12 (S.D.N.Y. 2016) (detainee going without water or sanitary needs for several hours did not a constitutional violation); *Webster v. City of New York*, 333 F.Supp.2d 184, 199-200 (S.D.N.Y.2004).

Far from the type of minor or temporary deprivations of basic human necessities that are sometimes necessary for the effective management of a detention facility, the depraved conditions that Plaintiff alleges he was subjected to as a pretrial detainee, which the Court assumes for the purposes for this motion are true, *see Iqbal*, 556 U.S. at 678, constitute punishment for the purposes of the Fourteenth Amendment.  Requiring a detainee to urinate and defecate in a room with no toilet for six poses a significant risk to health and safety and degrades human dignity.  While not permitting Plaintiff to use a toilet for a few hours might not be unreasonable, six days is an unacceptable amount of time for a detainee to be prevented from

using the bathroom (or even toilet paper).  Moreover, such a practice is "not reasonably related to a legitimate governmental objective." *Lareau*, 651 F.2d at 103.  Plaintiff also alleges he was in serious need of urgent medical attention for the batteries he had swallowed, and the failure to address this condition for over six days is likewise a significant deprivation without any legitimate government objective.  Therefore, Plaintiff has satisfied the first prong of the deliberate indifference test for an unconstitutional conditions of confinement claim under the Fourteenth Amendment at this stage.

Second, in addition to plausibly alleging that his conditions of confinement were objectively serious enough to constitute deprivations of his constitutional rights, Plaintiff has also plausibly alleged that Defendants Ball and Leon either knew or "should have known" of the risk posed to him by those conditions.  *Darnell*, 849 F.3d at 35.

The facts alleged in Plaintiff's Complaint are sufficient to show that Defendants Ball and Leon knew or should have known that he was being kept in the intake cell for days at a time and that the cell had no toilet.  As discussed above, Plaintiff had plausibly alleged that Defendant Ball retaliated against Plaintiff for the complaint he made against Defendant Aponte by forcing him to be kept in the intake cell for approximately six days.  *See supra* II.A.  Though Plaintiff does not specifically state that Defendant Ball personally came by the cell and witnessed his condition, Plaintiff alleges that Defendant Ball had access to the unit and purposefully kept him in the intake cell for six days.   Defendant Ball therefore should have been aware of the fact that the intake cell did not have a toilet and that Plaintiff had been kept there for that period of time.

Plaintiff has also plausibly alleged that Defendant Leon was aware of his alleged conditions, because he asserts that she was the supervisor of the unit.  As the supervisor,

11

Defendant Leon at the very least should have known of his conditions. Moreover, Plaintiff alleges that she in fact knew and "refused" to move him out of the intake cell. Comp. ¶ 26.

Because Defendants Ball and Leon were allegedly aware, or allegedly should have been aware, of the fact that he was being kept in an intake cell with no toilet and was unable to leave for six days to receive medical attention, and because the risk to Plaintiff's health and safety posed by these conditions should have been obvious to anyone who was aware of them, the Court finds that Plaintiff has plausibly alleged that Defendants Ball and Leon "acted with at least deliberate indifference" as to Plaintiff's unconstitutional conditions of confinement. *Darnell*, 849 F.3d at 29.

However, Plaintiff has made no such allegations against Defendants Aponte, Cruz, and Green. Plaintiff has not asserted that these officers witnessed his conditions in the intake cell or were otherwise aware of the fact that he was being kept there. Therefore, Plaintiff has failed to plausibly allege a conditions of confinement claim against these Defendants.

The Court denies Defendants' motion to dismiss Plaintiff's First Cause of Action as to Defendants Ball and Leon, and grants as to Defendants Aponte, Ball, and Cruz.

III. CONCLUSION

For the reasons discussed above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss the Plaintiff's Complaint. Plaintiff's first cause of action is dismissed as to all Defendants except Defendants Ball and Leon, Plaintiff's second cause of action is dismissed in its entirety, and Plaintiff's third cause of action is dismissed as to all Defendants except Defendant Ball. This resolves docket number 26.

Plaintiff may proceed with his Section 1983 claims for retaliation in violation of his First Amendment rights against Defendant Ball and for his unconstitutional confinement in violation

12

of his Fourteenth Amendment Rights against Defendants Ball and Leon. Discovery was stayed in this case pending resolution of the instant motion. *See* Dkt. 58. The Court will schedule an initial case management conference by separate order.

SO ORDERED.

Dated: November 19, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

13